Case No. 15-3260 Donovan E. Simpson v. Warren Correctional Institution Oral argument not to exceed 15 minutes per side. Maura Jait for the appellate. You may proceed. Good morning, Your Honors. May it please the Court, Maura O'Neill Jait on behalf of the Warden. I would like to reserve two minutes for rebuttal. The District Court decision should be vacated. Inmate Donovan Simpson should not be granted any habeas relief. Simpson's petition for habeas corpus should be denied and dismissed with prejudice. The District Court committed clear error and did not apply the proper deferential ADPA review standard. Contrary to the District Court's decision, Howes v. Fields directly alters the Court's prior determination regarding Simpson's April 2000 statements. Additionally, a prior panel from this Court made a harmless error determination regarding Simpson's June 20, 2000 statement, and that harmless error determination was directly dependent on the Court's conclusions regarding the April 2000 statements. So Howes v. Fields also alters the outcome regarding Simpson's June 20, 2000 statement. The State Appellate Court determined that Simpson was not in custody for Miranda purposes during the April 2000 interviews, and that determination is entitled to deference. As an alternative finding, the State Appellate Court also found that even if Simpson had been in custody for Miranda purposes, that admission of the April 2000 statements would have been harmless error, and that the harmless error determination regarding the April 2000 statements is also entitled to ADPA deference in this habeas case. The State Court reasonably applied Miranda and Berkemer and used a totality of the circumstances test and considered the same factors that the Supreme Court reiterated in Howes v. Fields. The State Appellate Court relied on the fact that these April interviews were short in duration. Simpson was not a suspect at the time. He was not confronted with any evidence of his own guilt. He did not implicate himself. The interviews were amicable. There were no threats or coercion, and there was no additional restriction on his freedom. Like the State Court, this Court has followed other circuit courts and used that same analysis that Miranda warnings are not required unless an inmate is subject to additional restraints beyond the normal restraints inherent in prison life. This Court applied that same rationale in U.S. v. Ozuna, O-Z-U-N-A-170-F-3-654, and U.S. v. Coffield, 960-F-2-150. When this circuit did not apply the added restriction standard, the Supreme Court reversed the Court, and that was Howes v. Fields. In Howes, the Supreme Court sanctioned the exact same approach that the State Appellate Court used in Simpson's case, which was traditional context-specific analysis to determine whether the facts of the case were likely to create an atmosphere of coercion. Assuming that you're correct on the April statements, could you address the question about the June 20th statement? Yes, Your Honor. A different panel in this Court conducted a harmless error determination regarding Simpson's June 20th, 2000 statement, and that harmless error determination was directly dependent on the determination regarding the April 2000 statements. Are you conceding then that the June 20th statement did violate his constitutional rights, but you're trying to go to harmless error? No, Your Honor, we're not conceding. Okay, so what's the issue then in terms of why would the prior panel be wrong in light of Howes? That was the only issue that was sent back by the U.S. Supreme Court, right? That's correct, but because this was a GVR related to Howes, it's clear that Howes directly affects the harmless error determination as opposed to the Court's determination that it was an error. How does Howes affect the harmless error determination? I mean, Howes is a custody case, right, that established a more restrictive view of when a defendant is in custody or not, and that doesn't even apply to the June 20th statement, does it? Although not all constitutional error entitles a petitioner to habeas relief. In habeas review, the relevant standard is the Breck standard, and an error would have to have not only be in constitutional magnitude, but have a substantial and egregious effect on the outcome. In this case, the prior panel viewed the statements together in making their harmless error determination as to whether the June 20th statement was harmless error. The prior panel viewed the statements together and said its harmful error finding was reinforced by a combination of admitting the April 2000 statements and the June 20th 2000 statement. So your thrust then is to say, we should reevaluate the harmless error determination of the prior panel because it relied on the April statements being in violation of Miranda. Did you raise this argument in the district court? Yes, we did. In both our briefing and our oral argument before the magistrate judge, and the district court decided not to make any determinations. But isn't there still a question about whether the June 20th statement is, as you're now arguing, harmless error? Or is that the question? I mean, I don't understand the House. I agree with, at least superficially, with Judge Griffin. The House ruling doesn't apply directly to the June statements. Although there were four statements in this case. We're aware of that. And the harmless error determination regarding the June 2000 statement is directly dependent on the admissibility of the April 2000 statements. The other issue is that the- Why is that true, though? I don't understand your argument. Because the prior decision stated that the statements were viewed together and that harmful error was reinforced by the combination of admitting the April 2000 statement and the June 2000 statement. There also, in the prior decision, there also was a statement that the court acknowledged. The jury could have made the requisite adverse credibility determinations, notwithstanding the April interviews, which shows room for reasonable disagreement. One of the problems is that the harmless error determination really focused on evaluating the Simpson's credibility. And it's impossible to pinpoint the exact tipping point when the jury would have found that he wasn't credible. And it would be impossible in hindsight and improper in habeas review to say, well, it happened after the first April statement. It happened after the second. No, it must have been the third. It was the fourth. It's impossible to say. The issue is whether there is reasonable justification for the state court's determination. Well, the state court held that the June 20th statement let me see if I'm not, I may be getting totally confused, but the June 20th statement the state court said was voluntary. That's correct. They did not make a harmlessness ruling. That's correct. They didn't need to. That's correct. Okay. What do we make of that? Well, the only harmless error ruling was done by the prior panel in this court, which also shows the room for reasonable disagreement in this case. They applied Brecht. The state court applied Chapman. No, no, the former panel applied Brecht. Correct. And not Brecht through the EDPA lens because there was no finding of harmlessness by the state court. That's correct. Then why did you just say a minute ago they applied Chapman? I thought Justice Daughtry was asking about the state court. The state court did or did not make a harmlessness ruling. Now I'm getting confused. In regards to the April 2000 statements, they made a harmless error determination and properly applied Chapman. They did not conduct any harmless error determination regarding the June 20th. I'm sorry. I thought the state court found that he was not in custody, and therefore there was no violation. In regards to the April statement, the June 20th he was Mirandized. And the state court said that was voluntary. Correct. In the prior panel in this court. Applied, said, well, he was in custody, but because of what he said it's harmless error? They said the error wasn't harmless. Wasn't harmless. Okay. But that determination was based on the credibility. I think we're getting lost here. Let's try to go back to the basic question. Assuming that Howe's results in the April statements, in the totality of the circumstances being admissible. So we're getting directly then to the June 20th statement. The prior panel said the June 20th statement, admission violated constitutional rights. And when you looked at the June 20th statement, as well as the April ones, there was not harmless error and therefore granted habeas. Correct. Supreme Court says go back, rethink Howe's. Assuming that Howe's says the April statements are okay. Then we have the question. What did you challenge in the district court and what are you challenging here vis-a-vis the June 20th statement? Both in the district. Are you claiming in the district court in here that the June 20th statement is properly admitted and or that even if wrongfully admitted, it is harmless error? That's correct. We don't concede the error, but if it was error to admit it, that error was harmless. Did you argue that to the prior panel this court? I don't believe there is a harmless error argument because up until that point, no court had ever found that it was an error to admit that statement. Well, since you didn't raise it in the prior appeal to this court, haven't you waived harmless error? I would argue no. I know that opposing counsel has made that argument, and I don't believe the warden is under an obligation to, if the warden is arguing that it was an error, to raise an alternative argument that any error was harmless. I believe if there was an isolated statement made, that it was taken out of context. The court can sua sponte raise harmless error, which of course is what was done here, because there had never been an error finding before. Most evidence is going to be harmful. It's one litigant or the other, and that doesn't mean it's harmful error of constitutional magnitude to admit the evidence. Why are you saying it's harmless error to admit the June 20th statement, assuming that we overcome your waiver problem? Because there is ample evidence of his guilt in the June 16th statement that there is no question as to the admissibility that he made sufficient admissions there, and also that the admissions in the How do you distinguish the two June statements? What new is said in the June 20th statement? Are you saying they're identical? They're very similar. In the June statement, he admitted that he had some prior knowledge of the plan, that he was the driver, that he participated in making the Molotov cocktails. Under Ohio law, given transferred culpability between abettors and principal offenders, that those admissions alone would be enough. But that is injurious, is it not, to his defense, these further admissions as to his participation and his knowledge? And isn't that why under Breck it is not harmless? Because this June 20th statement adds additional facts and knowledge and participation? You were talking about the evidence was sufficient to convict him before the June 20th statement. Well, that's a different issue, that you have sufficient evidence. But here you've got additional evidence beyond what's needed for conviction but would likely persuade the jury to convict him because of his extensive knowledge of the facts. I mean, sufficiency of the evidence is distinct from the Breck standard of what is prejudicial, substantially injurious on the verdict, is it not? I mean, you agree with that, don't you? They're different standards? Yes. Okay. So tell me under Breck why the June 20th statement is not prejudicial, injurious. Well, to be substantially injurious, I think there's still the problem of all of these statements weighing on his credibility in one fashion or another. And it's impossible to pinpoint the exact tipping point. Yes, but in the June 20th statement, that's the first time he said that he knew about the whole thing ahead of time. No, he did make some admissions of that in his June 16th statement. I think it was a difference between in the June 16th he said he knew about it a day ahead of time and in the June 20th he said he knew about it a weekend. Can you tell me where that is in the record? He said in June that he was more involved than he'd initially let on. The day before the fire, Smith asked Simpson if he could drive Kelly somewhere that evening. But that isn't anywhere near what he said on the 20th. Well, one thing is, one of the courts I know had cited that he was all over the place in that June 20th argument, and that's correct. I mean, he did make some of the same admissions that he made in his June 16th 2000 statement, and then he also retracted some and went back to saying that he had no involvement. Well, yes, he began by saying he had no involvement, but then he went on to say that he knew about it ahead of time and what he had done. And the question is how that can be harmless, even if the June 20th statement is held to be voluntary and admitted. Well, it has to be substantially harmless, and I think it's impossible to – I mean, the evidence has to be taken all together, and it's impossible to say that this was the piece of evidence that – I'm sorry – that was the tipping point. We've taken you way over your time, so we'll let you have your rebuttal time after we hear from the other side. Good morning. May it please the Court, Sonia Lebsack for Donovan Simpson. There are two reasons the judgment below is correct. We prevail under both, and I'll address both, but I want to start with the way that is simplest, which is the June 20th statement. As your Honor's questions have indicated, the admission of Simpson's June 20th station house statement, which this Court in its prior opinion called by far the most damaging evidence against Simpson, particularly with respect to his involvement in the planning of the offense, violated clearly established law. And that ruling independently supports the partial habeas relief ordered by this Court in 2010 because the warden never raised nor demonstrated, per Judge Griffin's question, that any of this error was harmless. The warden waived it. The warden affirmatively conceded it before this Court during oral argument in 2010, and that makes perfect sense. There's no way in which this error could be said to not be substantial and injurious to the particular convictions that are currently at issue in front of this Court. There is simply no way in which the convictions were, quote, surely unattributable to this error, and the Court need go no further. All Simpson is asking is for an affirmance in support of the judgment. This is an argument that is fully and independently sufficient to support the judgment this Court ordered in 2010 and which the district court ordered below. Did the warden make the harmless error argument in the district court on remand from the Supreme Court GVR? The warden's statements on harmlessness are incredibly confused in the district court. It's not at all clear to me that the issue was raised, but even if it was, it is too late. This case is, as Your Honor noted at the outset, is on remand from the United States Supreme Court on a narrow question, which is, in light of Howes v. Fields, does the Court's judgment need to change? Now, it doesn't need to change for a few reasons, but one of the reasons is this Court's 2010 ruling on the June 20th statements is an independent and sufficient ground to support the judgment that's unaffected by Howes, the harmless error determination. Well, the warden never raised whether it was harmless. Did the harmless error statement in the Court of Appeals, our Court of Appeals' first opinion, rely on the Miranda violations in the April statements? Not at all, and I want to be clear about this, because what the Court raised and addressed in the 2010 opinion was whether or not the April statements were harmless. The warden raised throughout the litigation, including the state court and in the district court, the question of whether the April admission was harmless error. The panel responded by answering that question by saying, the April statements harmed Simpson. Now, in the course of explaining why the April statements harmed Simpson, the Court discussed the ways in which the June 20th statements also harmed Simpson, but the Court did not separately address the June 20th harmfulness, because in response to a question by the court to the warden's counsel, the warden said, I'm not saying that the admission of the June 20th statement was harmless error. That was the state of the 2010 panel opinion. Now, what I think the panel said in 2010 with respect to the June 20th statement demonstrates why the error was harmful, but the panel itself did not resolve that question, and the issue is now live in front of this Court, assuming the April statements come in. And the Court need not necessarily resolve whether or not the April statements should come in, because again, as Simpson has been arguing, the panel's June, excuse me, the panel's 2010 decision already creates the ground on which to support the judgment, which again is partial habeas relief only as to the most serious, specific intent convictions that Simpson was facing. Now, I do want to correct, the warden spoke a few moments ago about the June 16th and the June 20th admissions, and I want to be very clear, because I believe the warden said some things about what happened on June 16th that simply didn't happen at all, and I want to correct the record and make sure that we understand what happened on June 16th. The day of the arson, Simpson said on June 16th that he had been paid a small amount of crack in order to drive the other defendant, Daryl Kelly, somewhere. Simpson then drove Kelly as, you know, as, you know, somewhere around. They drove around, they drank liquor, they smoked crack, then Kelly gets out of the car, Simpson pulls around the corner, picks the other, you know, Kelly up, and they drive away. That is the substance of the June 16th statement. Only on June 20th did Simpson admit to even greater involvement in the planning of the crime. There are several critical pieces of evidence on the June 20th statements. The first is Simpson stated for the first and only time he was present one week before when the arson was planned. Another person involved in the crime explained her motivation for the crime, which was that she and another woman were sort of competing dope dealers and they had a feud, and this was explained to Simpson a week before the arson. The prosecutor later uses this to impute that woman's motive to Simpson. Also for the first and only time, Simpson admits he was present when the co-defendants discussed how to make the Molotov cocktails. That never happened on June 16th. We've pointed out in our brief and throughout this litigation that it was never discussed on June 16th. It was for the first time discussed on June 20th. Again, Simpson acknowledged for the first and only time on June 20th that he knew what was going to happen while he was driving Kelly to the arson. These statements greatly reduced the leap the jury had to make in attributing the purpose to kill to Simpson. The June 20th statements also greatly impacted and prejudiced Simpson's credibility. The entire purpose of the June 20th statement was for Simpson to take a polygraph to prove his truthfulness to the officers, but he began that statement by first retracting all of his prior admissions and saying he was nowhere near the crime, and then admitted to even deeper involvement. Then, after he admitted to even deeper involvement, the officers continued to cross-examine him, saying, you know, is that it? Did you throw the bombs? Did you make them? And Simpson continually denied any further involvement. The officers basically said, you know, we had a problem with your truthfulness in the past. You better make sure you're telling us the truth. And the entire focus of the June 20th statement was essentially whether Simpson was finally leveling with the officers or whether he continued to hold back, essentially that he might have, in fact, been a principal and not simply an aider and a better. And finally, the June 20th statement permeated the trial. It was the keystone of the prosecution's case against Simpson as to these most serious charges. And that's most clear from the closing statement, which I urged the court to look at. For example, the prosecution is saying initially he told the polygraph examiner he was at Shanning Way, but again, he broke down and even got more off his chest that time. He admitted to you they planned to kill. And the statement goes on. It's simply impossible for the warden to show that these, the admission of this statement, the way that it was actually used at Simpson's trial, failed to have a substantial or injurious effect and that these verdicts were surely unattributable to that error. And I think the warden's own statements today when she says it's impossible to pinpoint what might have been the cause is because the state's evidence as to Simpson's specific intent crimes was so weak it hung by a thread. And as this court said in its prior 2010 opinion, the state had to come up with something creative. They had to cobble all of these statements together to sort of scrape over the finish line. And so the fact that the April statements were deemed harmful says nothing about whether the June 20th statement was also harmful, and clearly it was. So are we applying the standard EDPA standard of unreasonable application? With respect to the April statements? No, with respect to the June 20th statement. The unconstitutional admission of the June 20th statement was resolved by the panel in 2010, and it's not in front of this court as part of the limited remand for Howes v. Fields. The warden also hasn't raised it on appeal to this court. So even the warden is not asking this court to go back and reconsider whether that statement was unconstitutionally admitted. It's simply the law. In effect, you're saying we're bound by that determination in the 2010 and that the 2010 Sixth Circuit opinion and that the Supreme Court GVR, it's a grant vacate and remand, but it only is in light of Howes. That's right. The unconstitutional admission of the June 20th statement is settled, and because the warden never raised the question whether that was harmless error, and again, that's the warden's burden to both raise and demonstrate harmless error. The issue is essentially closed. In Simpson's view, this case, the judgment is completely resolved by the court's 2010 opinion. It is an independent and sufficient ground because the warden basically had to prove harmlessness and not only did not prove that but did not even try to. Now, I do want to spend a few moments on the April statements unless there are further questions on the June statements. Is it the warden's burden to prove harmlessness or is it the petitioner's? It is the warden's burden to prove harmless error. The Supreme Court has said under McNeill and also Dominguez-Benitez that that's the case, and this court has said many times the state also bears the burden, and I would point the court to Gray v. Moore. Under Breck, I thought under Breck it was the petitioner's burden because it's an habeas case. Well, certainly, let me back up. The warden must demonstrate that the error was harmless. Now, I think are you ask your question one more time. Under Breck, the other side made the argument, well, you can't really tell if this had an effect on the jury's verdict, and therefore you should not grant habeas, and I don't think that's quite correct because I think this statement is very injurious and very prejudicial, but I just thought under Breck it's petitioner that shows that it was not harmless error rather than the, I mean, whose burden is it when the evidence is equal under Breck? I believe the state bears that burden, Your Honor. Okay. I'm pretty certain about that. I want to take a few moments just to address the April statements. Simpson also prevails under these statements. Now, surely what Howes v. Fields did was it said the court applied the wrong standard. There isn't a bright line test. Mathis doesn't compel a bright line standard whenever a prisoner is taken into private and questioned about events outside the prison. It does not necessarily mean he was in custody, and there's actually no dispute between the warden and Simpson on this question. We agree on the standard to be applied. We disagree about whether the state court was objectively unreasonable in applying it, and I think there are two key reasons I want to focus on. First, it's undisputed that Simpson was involuntarily isolated with officers who never told him he was free to leave. The duration of Simpson's separation in the prison population, therefore, was dependent upon his interrogators, not on something incident to prison life, that is Simpson could never sort of walk around and go wherever he pleased, but that the officers controlled the duration of the interrogation. And in Schatzer, the Supreme Court specifically pointed this out, as if to say this is the kind of thing that makes someone in custody. And in Howes, the Supreme Court emphasized this fact. In Howes, the Supreme Court called it the most important fact, and indeed it is. Courts of Appeals and state courts for decades have emphasized that when you tell someone you are free to leave, it is a very tough burden to bear to show custody nonetheless. And here it's completely undisputed between the warden and Simpson that Simpson was never told he was free to leave, putting the balance of power with the interrogators. Second, early in the April- Let me ask you this, just for future purposes maybe. Obviously, if he's in prison, nobody's going to say, you're free to leave, like you can go down and knock on the front door and it'll open and you can go home. I gather what that would mean is you would say to the interrogee, you're free to leave, that is you can go back to your cell, you don't have to sit here and talk to us. Okay, all right. I just wanted to make sure that was what we were talking about. Yes. And secondly, I see I'm out of time. You want to just state your second point? Certainly. And this is the point that the officers made clear to Simpson that they would be deciding whether he would stay in prison or be let free. And this, in particular, creates the kind of inherently compelling pressure that undermines a defendant's will to resist and to compel him to speak when he otherwise would not do so freely. Thank you. Thank you. Just briefly, Your Honors, in clarification, the State Appellate Court in their determination of facts, this was what their determination was regarding Simpson's June 16th question, was that he had said he had met Leah and Kelly the day before the fire when Leah asked Simpson to take Kelly somewhere that night. Later that evening, Kelly and Simpson took two bottles of alcohol, filled them with gasoline. They brought the bottles to Leah who showed them how to make a Molotov cocktail. Simpson and Kelly then went to the area of 151 South Wheatland Avenue and drove into an alley. After smoking some crack, Kelly got out of the car with two bottles and a few seconds later, appellant heard glass breaking and then saw Kelly running back towards the cars without the bottles. The two sped away to a crack house where they paged Leah. She arrived and paged them both with crack cocaine. So those were the admissions that he did make in his June 16th statement. Your opponent says that this was decided with regards to the June 20th statement in the 2010 Sixth Circuit opinion and is not affected by the GVR based on Howes. Is that correct? Well, relief was only granted in terms of the June 20th statement because the court found it to have a substantial and injurious effect on the jury's verdict. Was the finding in the 2010 Sixth Circuit opinion that it was constitutional error to admit the June 20th statement? Is that even before us? Did you litigate that either in the district court on remand or in your briefing here? We did. We attempted to litigate it in the district court, although the district court obviously did not consider it or was not going to revisit that issue. Thank you. We thank you both for your argument. The case will be submitted with the court call.